```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF NEW YORK

 3

 4   UNITED STATES OF AMERICA,           )
                                         )
 5                                       )
                                         ) CASE NO. 20-CR-155
 6                                       )
        vs.                              )
 7                                       )
     AUSTIN SUAREZ,                      )
 8                                       )
                 Defendant.              )
 9   _____)
```

       **TRANSCRIPT OF PROCEEDINGS**
     **BEFORE THE HON. THOMAS J. MCAVOY**
       **TUESDAY, MAY 11, 2021**
        **ALBANY, NEW YORK**

**FOR THE GOVERNMENT:**
 OFFICE OF THE UNITED STATES ATTORNEY
 By: EMMET O'HANLON, AUSA
 445 Broadway, Room 218
 Albany, New York 12207

**FOR THE DEFENDANT:**
 BARTLETT, PONTIFF, STEWART & RHODES, P.C.
 By: GREGORY J. TERESI, ESQ.
 One Washington Street, PO Box 2168
 Glens Falls, New York 12801

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

1                    (Open court.)

2            THE CLERK: Good afternoon. The date is Tuesday,

3   May 11, 2021. The time is 2:05 p.m. We're here in the matter

4   of the United States of America versus Austin Suarez, case

5   No. 20-CR-155. We're here for purposes of sentencing. May we

6   have appearances for the record.

7            MR. O'HANLON: Good afternoon, Your Honor. Assistant

8   US Attorney Emmet O'Hanlon for the government.

9            THE COURT: Good afternoon, Mr. O'Hanlon.

10           MR. TERESI: Good afternoon, Judge. Gregory Teresi on

11  behalf of Austin Suarez, who is seated my right.

12           THE COURT: Good afternoon, Mr. Teresi. Good

13  afternoon, Mr. Suarez.

14           THE DEFENDANT: Good afternoon, sir.

15           THE COURT: All right. Why don't you have the

16  defendant sworn, if you would.

17           THE CLERK: Please state your name.

18           THE DEFENDANT: Austin Suarez.

19           THE CLERK: Please raise your right hand.

20                  (Whereupon, defendant placed under oath.)

21           THE CLERK: Thank you. You may be seated.

22           THE COURT: All right. The Court has received and

23  examined a number of documents in connection with this matter.

24  Of course, the Presentence Investigation Report, sentencing

25  memorandum. Reciting those things as we go along.

1	I also got a number of letters that were written on
2	behalf of Mr. Suarez that I'd like to spread upon the record.  I
3	have a letter from Terence McSorley, who was retired vice chair
4	of the democratic county committee and speaks well of
5	Mr. Suarez; a letter from Carl Cortez, who also has a lot of
6	good things to say about him and his family; a letter from
7	Veronica Santos that was written on his behalf and describes him
8	as being focused and goal oriented; a letter from Kevin Santos
9	in support of Mr. Suarez; and another letter from Isaac Santos,
10	Jr.; and I think there was a long letter from Mr. Suarez's
11	mother that she wrote about his early years in his life as we
12	went along up to this point and was very descriptive, and her
13	name is Tania Carter.
14	     And also let me ask Mr. Teresi, have you had an
15	opportunity to review the Presentence Investigation Report with
16	your client, Mr. Suarez?
17	     MR. TERESI:  I have, Judge.
18	     THE COURT:  Mr. Suarez, did you read the report?
19	     THE DEFENDANT:  Yes, sir.
20	     THE COURT:  Did you talk it over with Mr. Teresi?
21	     THE DEFENDANT:  Yes, sir.
22	     THE COURT:  Mr. Teresi, is there anything in the
23	report that you think the Court should take special notice of?
24	     MR. TERESI:  No objections to the report, Judge.  We
25	previously filed a few, and probation did submit a supplemental

1    report.

2            THE COURT:  How about you, Mr. Suarez?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  Mr. O'Hanlon?

5            MR. O'HANLON:  No objections to the final version of

6    the PSIR.

7            THE COURT:  The Court is going to adopt the

8    information and sentencing guidelines application found in the

9    report.

10           And I'd like to ask Mr. Teresi what he'd like to say

11   on behalf of his client Mr. Suarez.

12           MR. TERESI:  Judge, not to reiterate the points --

13           THE COURT:  You can take your mask down so I can hear

14   you.

15           MR. TERESI:  Thank you.  I appreciate that.

16           Not to reiterate every point within my sentencing

17   memo, but to highlight the focus from an attorney's perspective

18   on his client, who I've gotten to know quite a bit over the last

19   year.  At one point, we were preparing to go to trial on this

20   case.  And to me, there were some issues with the case.  But my

21   client focused on family, recognized, at some point recognized

22   the tremendous amount of risk that he would be taking in going

23   to trial.

24           He's 26 years old.  From a 42-year-old, he's a kid.

25   He's got his life ahead of him, and certainly he's going to deal

1  with some significant incarceration as a result of his actions,

2  but he stands before the Court prepared to accept whatever

3  consequences the Court may deem appropriate.

4        I'd ask the Court to take into consideration the fact

5  that he does have the support network that a lot of the

6  defendants that I represent don't have.

7        THE COURT:  That's right.

8        MR. TERESI:  Including two women who are in the

9  courtroom here today.  To me, that is a lot of times the

10 difference between somebody who's going to change and turn their

11 life around and somebody who's just going to continue down the

12 path as a career criminal.

13       He's made a tremendous amount of mistakes.  There's no

14 doubt in my mind.  It is all hooked to narcotics, as the Court

15 is well aware is a major problem in this country and this area.

16 But he's been clean and sober for a year and a half now, focused

17 on what I call keeping your eye on the prize, which in his eye

18 is those two kids.

19       It's interesting at the time that his wife was

20 preparing to go through birth, I was meeting with her and going

21 through the same thing.  My wife was almost exactly as far along

22 as Veronica, and Austin and I had that bond that we had those

23 conversations.  This wasn't somebody who was trying to needle

24 the system.  This was somebody who was trying to do what he

25 could to be back with his family, albeit he needs the substance

**USA v. Suarez - 20-CR-155**

1  abuse treatment that he's going to receive, but I'm confident

2  that when he does get out, that the treatment that he receives

3  while he's incarcerated coupled with the support and the family

4  that he's got on the outside, he's got all the skills to be able

5  to make it.  He's a skilled tradesman.  He's articulate.  He's

6  smart.  He's business minded.

7           I'd ask the Court to take into consideration those

8  things.  I realize the guidelines are high, but in my

9  estimation, this does warrant a deviation from those high

10 guidelines, not to get him off scot-free, Judge, but to get him

11 back with his family.  The Court has the arm of probation when

12 he is released in the event that he can't get his life together.

13 I'd ask the Court to give him a break in this one instance and

14 let him demonstrate to you that he can make something of

15 himself.  Thank you.

16           THE COURT:  Thank you, Mr. Teresi.

17           Mr. O'Hanlon.

18           MR. O'HANLON:  Your Honor, Judge, I'd say the

19 guidelines in this case are high.  He's looking at a guidelines

20 range of between 100 and 125 months.  Those guidelines don't

21 come out of thin air.  It's based on essentially an unremitting

22 string of criminal violations for the two and a half to three

23 years leading up to his role in the instant offense, which was

24 fairly limited to the extent that he was aiding and abetting the

25 theft of the gun store that resulted, as the Court is aware, in

1  three AR-15 style rifles being stolen.  They've since been

2  recovers.  So that mitigates some of the threat to the

3  community, but in and of itself, it's a very dangerous act.

4           And I won't go through my entire sentencing memorandum

5  either, only to note that the defendant's behavior leading up to

6  his arrest in this case is quite at odds with the picture that's

7  painted of him in the character letters that were submitted to

8  the Court.  And to the extent that he has a network supporting

9  him, hopefully that will be in place when he gets released, but

10 it wasn't sufficient to protect the community leading up to his

11 behavior in this case.

12          This will be his fifth felony conviction.  Pulling

13 from some of the information within the PSIR, defendant's prior

14 arrests involved engaging in high speed vehicle pursuits with

15 law enforcement that injured law enforcement agents and risked

16 the lives of civilians.  It involved smuggling a small caliber

17 revolver without its cylinder in his rectum into a jail for some

18 unknown purpose when he was reporting to the Greene County Jail

19 as well as assaulting a fellow inmate in jail and causing

20 serious bodily injury.

21          So for all those reasons, government is advocating for

22 a guideline sentence, a sentence that would deter future

23 criminal conduct and protect the community.  We're asking that

24 the Court impose a supervised release sentence of three years,

25 which is the max, and order the defendant to pay the $624 in

**USA v. Suarez - 20-CR-155**

1  restitution to the operators of the gun store that was
2  burglarized.  Thank you.
3              THE COURT:  All right.  Mr. Suarez, did you want to
4  say anything to me before I sentence you?
5              THE DEFENDANT:  Yes, sir.
6              THE COURT:  All right.  Take your mask down so I can
7  understand you.
8              THE DEFENDANT:  Sir, I would like to apologize to the
9  Court.
10             THE COURT:  Wait a minute.  Is there a microphone he
11 can have so I can hear him clearly?  Go ahead.
12             THE DEFENDANT:  Sir, I would like to apologize to the
13 Court, my family, and anyone involved in this case.  I have been
14 away from my family for a year now.  Our time is the most
15 important thing in life.  I'm truly sorry for my bad choices and
16 wasting all our time.  However, I can't change things or take
17 them back.
18             MR. TERESI:  Judge, if I may.
19             THE COURT:  Sure.  Go ahead.
20             MR. TERESI:  I've been away from my family for a year
21 now.  Our time is the most important thing in life.  I'm truly
22 sorry for my bad choices and wasting everyone -- wasting all of
23 our time.  However, I can't change things or take back all my
24 mistakes.
25             What I will do is keep working on my recovery.  Every

1  day, I'm a step closer to who I want to be.  My addiction has
2  led me down the path of many mistakes and bad company.  I'm
3  moving forward in the right direction, and I have been clean and
4  sober for about a year now.  I feel good, and I am thinking
5  clearly.
6         All I want is to be there for my family.  I have a
7  smart 9-year-old daughter that needs me.  I also have a
8  wonderful baby boy who is just seven months old, and I have yet
9  to hold him and look into his eyes, to tell him how much I love
10 him.  I have my wife, who is the most kind and loving person I
11 have ever met, and my family needs me.  My children need me.
12        The older I get, the more I think about everything.
13 Even just two, three years ago, who I thought about and how I
14 thought about things were different.  Now, all I think about is
15 my kids and my family.  I'm so hurt not being there for them.  I
16 never wanted to put them in this position.  I wish I could take
17 it all back.
18        Things have been so hard for my family.  Due to
19 COVID-19, I can't have any visits with my family, which is
20 making things so much more worse.  My family is being punished
21 along with me.  They don't deserve this, not one bit.  I feel
22 horrible because it's all my fault.
23        I just need a chance, one chance to show everyone who
24 I really am.  I am a loving family man who just wants to be
25 there for his family.  I am aware of how things may look on

1  paper.  Mostly those things happened between 18 and 23 when I
2  was using.  I'm not the kid, that kid anymore.  I'm focused on
3  being a good dad to my son and daughter.  I am focused on being
4  a good husband to my wife and a great son to my mother,
5  wonderful mother.
6          I'm on a good program that I'm going to continue when
7  I return home.  I have all positive thoughts and intentions.
8  It's really working well for me.  I have all the tools and
9  support for a lasting success.  All I need is a chance.  I know
10 it's not possible, but if I could go home today in exchange for
11 a lifetime of supervision, I would do it without a worry.  I say
12 that because I know I'm going home to be a good role model to my
13 children.
14         I want every part of my life, my family, or the
15 courts -- sorry.  I won't ever put myself, my family, or the
16 courts through this again.  I know that I'm not perfect.  I know
17 that I've made a lot of mistakes.  However, I'm a good person,
18 and I always have been.  I have my family, and I need to be
19 there for them.  I am someone worth saving.
20         I would like to ask the Court for mercy when
21 determining my sentence.  I'm not a bad person.  I'm just a dad
22 trying to make it back to his kids.  My kids are the ones who
23 matter the most.  The last year has taught me that, taught me a
24 lot about how important it is to be in contact with your loved
25 ones during these times.

1   My daughter is already having issues with me being --
2  over my incarceration, and the lack of interaction makes it
3  worse.  We can't spend time together like we used to.  I don't
4  want my son to have the same issues as his sister, all because
5  of my mistakes.  I'm very concerned for my children's mental and
6  physical health.  I just need a chance to make everything right
7  and fix all my previous mistakes.
8   I'm not asking for everyone to forget.  I'm asking the
9  Court, my family, the store owners, anyone involved to please
10 find it in your heart to forgive me.  Thank you.  Austin Suarez.
11   THE COURT:  Okay.  Thank you.
12   All right.  This of course is difficult, as all
13 sentences are, and particularly since Mr. Suarez is a very young
14 man, although he's had a very significant history of criminal
15 activity before he got involved in this gun theft venture, and
16 that gives the Court pause because past conduct is a real
17 indicator of future performance.  I'm afraid of recidivism in
18 this case, although I don't believe he's ever going to try to
19 rob a gun store again.
20   I do think if he stays on drugs and has access to
21 them, that's going to greatly influence his behavior, as I agree
22 with defense counsel, has been a principal cause of what put him
23 here in the first place, and that's a shame because he
24 recognizes that his primary obligation is to his daughter and
25 daughter's mother, and he wishes he could be there to fulfill

1  it.  And if he wasn't involved with drugs and the problem of not

2  becoming uninvolved, the Court thinks that his progress would be

3  a lot easier for him.

4  So the Court has reviewed and considered all the

5  pertinent information including but not limited to the

6  Presentence Investigation Report, the addendum, the plea

7  agreement involved, the submissions by counsel, the 2018 edition

8  of the Sentencing Guidelines Manual, and the factors outlined in

9  18 US Code Section 3553.

10  The Court adopts, as I indicated earlier, the factual

11  information and guidelines application contained in the

12  presentence report.  The Court finds the total offense level is

13  25, the criminal history category is a 5, and the guideline

14  range is 100 to 125 months.  However, pursuant to United States

15  Sentencing Guidelines 5G1.1C, because the statutory maximum in

16  this case is ten years, the guideline imprisonment range is 100

17  to 120 months.

18  Court finds the guideline sentence is sufficient but

19  not greater than necessary to meet the goals of sentencing

20  outlined in the statute including the need for the sentence to

21  reflect the seriousness of the offense, promote respect for the

22  law, and provide just punishment for the offense, afford

23  adequate deterrence to criminal conduct, and protect the public

24  from further crimes of the defendant.

25  In determining the appropriate sentence in this case,

1  the Court has considered the nature and circumstances of the

2  offense, the defendant's lengthy criminal history to include

3  this being his fifth felony conviction, as well as his history

4  of substance abuse.

5           So Mr. Suarez, upon your plea of guilty to Count 1 of

6  the indictment, it's the judgment of this Court that you're

7  hereby committed to the custody of the Bureau of Prisons to be

8  imprisoned for a term of 100 months.  Upon your release from

9  imprisonment, you shall be placed on supervised release for a

10 term of three years.

11          While on supervised release, you shall not commit

12 another federal, state, or local crime and shall comply with the

13 standard conditions that have been adopted by this Court.  Court

14 finds based upon the nature of the instant offense as well as

15 your history and characteristics as outlined in detail in the

16 presentence report and to provide rehabilitation services, the

17 following special conditions are necessary and justified in this

18 case.

19          Number one, you shall participate in a program for

20 substance abuse, which shall include testing for use of

21 controlled substances, controlled substance analogues, and

22 alcohol.  This may include outpatient treatment as recommended

23 by the treatment provider based on your risk and needs.  You may

24 also be required to participate in inpatient treatment upon

25 recommendation of the treatment provider and upon approval of

1  the Court.

2  The probation office will approve the location,
3  frequency, and duration of outpatient treatment.  You shall
4  abide by the rules of any treatment program, which may include
5  abstaining from the use of alcohol.  You shall contribute to the
6  cost of any evaluation and/or treatment in an amount to be
7  determined by the probation officer based on your ability to pay
8  and the availability of third-party payments.

9  Based upon your history of substance abuse and for the
10 purpose of effective substance abuse treatment programming, you
11 shall refrain from the use of alcohol and be subject to alcohol
12 testing and treatment while under supervision.

13 The Court finds based on your financial resources that
14 you do not have the ability to pay a fine.  However, it's
15 ordered you pay a special assessment of $100 to the Clerk of the
16 Court, which is due immediately.

17 Furthermore, the Court finds based on your financial
18 resources and projected earnings as well as your financial
19 obligations that you have the ability to pay restitution.
20 Restitution in the amount of $624 is due and payable
21 immediately.  Any outstanding restitution will be paid at a
22 minimum rate of 25 percent of your gross income while
23 incarcerated and 10 percent of your gross income or $100 per
24 month, whichever is greater upon your release from imprisonment.
25 If at any time you have the resources to pay full restitution,

**USA v. Suarez - 20-CR-155**

1  you must do so immediately.  You shall begin payment while in
2  custody.  Payments shall be submitted to the US District Court
3  Clerk to transfer to the victims, Seth and Nadine Gazzola, Zero
4  Tolerance Manufacturing, 1131 New York 9H, Ghent.  Excuse me.
5  9H, Ghent, New York 12075.  You are jointly and severally liable
6  for this restitution with your co-conspirator Duane Thompson,
7  docket No. DNYN 1:20-CR-000269-001.  The interest requirement on
8  this is waived.  So you won't be responsible for that.
9           You shall forfeit to the United States all right,
10 title, and interest in the property outlined in the preliminary
11 order of forfeiture and plea agreement.
12           Both you and the government have the right to appeal
13 this sentence.  You're advised to consult with your counsel to
14 determine whether an appeal is warranted.  Any appeal you take
15 must be filed within 14 days of the date that the judgment is
16 filed in this case.  And of course in the plea agreement, you
17 waived your right to appeal a sentence of imprisonment of 120
18 months or less.
19           So I don't believe there's anything to dismiss in this
20 case; is that right, Mr. O'Hanlon?
21           MR. O'HANLON:  I'm not aware, Judge.  Thank you.
22           THE COURT:  Mr. Suarez, you've done I believe 12
23 months or more already.  Of course, that's going to be
24 subtracted from the sentence I gave you.  I'm hoping that this
25 will finally cause you to give your full attention to raising

Case 1:20-cr-00155-TJM   Document 48   Filed 06/02/21   Page 16 of 17

16

**USA v. Suarez - 20-CR-155**

1  your daughter and taking care of your family responsibilities.
2              Court stands adjourned in this matter.
3                      (The matter adjourned at 2:29 p.m.)

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**USA v. Suarez - 20-CR-155**

17

1     CERTIFICATION OF OFFICIAL REPORTER

2

3

4     I, JACQUELINE STROFFOLINO, RPR, Official Court Reporter,

5  in and for the United States District Court for the Northern

6  District of New York, do hereby certify that pursuant to Section

7  753, Title 28, United States Code, that the foregoing is a true

8  and correct transcript of the stenographically reported

9  proceedings held in the above-entitled matter and that the

10 transcript page format is in conformance with the regulations of

11 the Judicial Conference of the United States.

12

13     Dated this 1st day of June, 2021.

14

15     **/s/ JACQUELINE STROFFOLINO**

16     JACQUELINE STROFFOLINO, RPR

17     FEDERAL OFFICIAL COURT REPORTER

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*