```
1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF NEW YORK

3   ----------------------------------------------------------

4   UNITED STATES OF AMERICA,

5                 -versus-                      20-CR-155

6   AUSTIN SUAREZ.

7   ----------------------------------------------------------

8                  TRANSCRIPT OF CHANGE OF PLEA

9   held in and for the United States District Court, Northern

10  District of New York, at the Federal Building, 15 Henry

11  Street, Binghamton, New York, on January 11, 2021, before

12  the HON. THOMAS J. McAVOY, Senior United States District

13  Court Judge, PRESIDING, via TEAMS.

14

15  APPEARANCES:

16  FOR THE GOVERNMENT:

17  UNITED STATES ATTORNEY'S OFFICE

18  BY:  ALICIA SUAREZ, AUSA

19       Albany, New York

20

21  FOR THE DEFENDANT:

22  GREGORY TERESI, ESQ.

23  Albany, New York

24

25
```

USA vs Austin Suarez

1          THE CLERK:  United States of America versus Austin

2     Suarez, 1:2020-CR-155.  Can we please have the appearances

3     for the record.

4          MS. SUAREZ:  AUSA Alicia Suarez on behalf of the

5     government.  Good morning, your Honor.

6          THE COURT:  Morning, Ms. Suarez.

7          MR. TERESI:  Gregory Teresi on behalf of Austin

8     Suarez.  Morning.

9          THE COURT:  Morning, Mr. Teresi; morning,

10    Mr. Suarez.

11         THE DEFENDANT:  Morning, sir.

12         THE CLERK:  Will the defendant please raise his

13    right hand.

14              (Defendant was duly sworn)

15         THE COURT:  Just for clarification purposes, it's

16    purely coincidental that the AUSA is named Suarez as well as

17    the defendant but hopefully, if I refer to one as Mr. Suarez

18    and the other as Ms. Suarez, it will make the record

19    relatively clear for appellate review.

20              All right.  As I understand it, Mr. Teresi,

21    your client, Mr. Suarez, wishes to change his plea and enter

22    a plea of guilty to count one of the indictment and admit to

23    the forfeiture allegations contained in that document.

24              Is that your understanding?

25         MR. TERESI:  Yes, sir.  That's correct.

USA vs Austin Suarez

 1              THE COURT:  Ms. Suarez, is that your understanding?

 2              MS. SUAREZ:  Yes, your Honor.

 3              THE COURT:  All right.  Mr. Suarez, would you state

 4     your full name for us, please.

 5              THE DEFENDANT:  Yes.  Austin Suarez.

 6              THE COURT:  And how old are you?

 7              THE DEFENDANT:  I'm 25.

 8              THE COURT:  And what's your date of birth?

 9              THE DEFENDANT:  4/11/95.

10              THE COURT:  Are you married?

11              THE DEFENDANT:  No, sir.

12              THE COURT:  Do you have any children?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  How many?

15              THE DEFENDANT:  Two.

16              THE COURT:  Can you tell me the ages of the

17     children and their gender.

18              THE DEFENDANT:  I have a nine-year-old daughter and

19     a four-month-old son.

20              THE COURT:  All right.  How far did you go in

21     school?

22              THE DEFENDANT:  I graduated.

23              THE COURT:  High school?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  All right.  What kind of work have you

USA vs Austin Suarez

1    done over the years?

2              THE DEFENDANT:  Mostly construction work, sir.

3              THE COURT:  All right.  Building, road

4    construction, what kind of construction?

5              THE DEFENDANT:  Carpentry.

6              THE COURT:  All right.  Have you had any alcohol or

7    narcotics in the past 48 hours?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  What have you had?

10             THE DEFENDANT:  Suboxone, sir.

11             THE COURT:  I'm sorry.

12             THE DEFENDANT:  Suboxone.

13             THE COURT:  Is that in any way affecting your

14   ability to understand the proceeding today or the charge and

15   the consequences?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Are you currently or have you recently

18   been under the care of any physician, psychiatrist or other

19   medical care provider for any physical or mental condition?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Are you taking any medication at the

22   present time?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Is what you just told me about?

25             THE DEFENDANT:  Yes, sir.

USA vs Austin Suarez

1          THE COURT:  All right.  Now, did the Court appoint

2     Mr. Teresi to represent you or did you hire him?

3          THE DEFENDANT:  He was appointed, sir.

4          THE COURT:  Has he shown you a copy of the

5     indictment?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Did he explain the charge in the

8     indictment to you?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  In a few moments I'm going

13     to be asking you some additional questions in order to learn

14     if you're pleading guilty freely and voluntarily with an

15     understanding of the charge and the consequences.  I'm going

16     to be asking you if anybody has made any promises of leniency

17     to you to induce you to plead guilty or threatened you with

18     the use of force to induce you to plead guilty.  I'm going to

19     asking you to confirm the information you just gave me about

20     your personal history and background and I want to advise

21     you, if your answers are not truthful, they may later be used

22     against you in a prosecution for perjury or for making a

23     false statement.

24               Do you understand that?

25          THE DEFENDANT:  Yes, sir.

USA vs Austin Suarez

1          THE COURT:  Before I ask you those questions and

2    before the clerk takes your plea, I have to tell you about

3    certain rights that you have in connection with this matter.

4    First of all, you'd have the right to persist in your

5    original plea of not guilty to the charge in the indictment.

6    You have the right to a speedy and a public trial by an

7    impartial jury of 12 persons or to a trial by the Court alone

8    if you were to waive or give up your right to a jury trial.

9          At such a trial you'd have the right to the

10   assistance of an attorney.  You'd have the right to confront,

11   that is, to see and hear any witnesses sworn against you and

12   to cross-examine them.  You'd have the right to remain silent

13   or to testify in your own behalf but you couldn't be

14   compelled to incriminate yourself or to testify at all and

15   your silence couldn't be held against you in any way nor

16   could any inferences of guilt be drawn against you if you

17   decided not to testify.

18          You'd have the right to use the subpoena or

19   other processes of the Court, to compel witnesses to attend

20   the trial and testify and to obtain any documentary or other

21   evidence you might wish to offer in your own defense.

22          Now, if the Court accepts your plea of guilty

23   here this morning, you're going to waive or give up all those

24   rights, there won't be a trial of any kind and the Court will

25   have the same power to sentence you as if you had been found

USA vs Austin Suarez

1    guilty after a trial on the count to which you're pleading.

2              A few moments ago you told me that the Court

3    appointed Mr. Teresi to represent you and he explained the

4    charge in the indictment to you and that you understood it.

5    Was that true?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Did he also talk to you about the

8    potential sentences or consequences of pleading guilty?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Did he discuss with you your chances of

11   winning or losing at trial, trial strategy and defenses?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  I also want to advise you that your

14   plea of guilty constitutes a waiver or giving up of your

15   right against self-incrimination and I want to warn you not

16   to plead guilty unless you are, in fact, guilty of the charge

17   made against you -- I said information, I meant indictment.

18   charge in the indictment.  Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  All right.  Now, your attorney,

21   Mr. Teresi, advised you of your rights?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Is there anything you'd like to ask me

24   about your rights this morning?

25             THE DEFENDANT:  No, sir.

USA vs Austin Suarez

1           THE COURT:  Are you satisfied with what Mr. Teresi

2    has done for you so far?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Has Mr. Teresi or Ms. Suarez or any

5    public official or anyone made any promises to you that you'd

6    be treated leniently in exchange for your plea of guilty?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  What's that?

9           THE DEFENDANT:  Oh, no, sir.

10          THE COURT:  No promises?

11          THE DEFENDANT:  No.

12          THE COURT:  No threats, right?

13          THE DEFENDANT:  No.

14          THE COURT:  All right.  So you're pleading guilty

15   freely and voluntarily.

16              Are you currently on probation from any other

17   court or parole from any institution?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  All right.  Madam clerk -- I'm sorry.

20   Will the clerk please read the indictment so we can take the

21   plea.

22          MS. SUAREZ:  Your Honor, I'm sorry to interrupt.

23          THE COURT:  Go ahead.

24          MS. SUAREZ:  Would the Court mind addressing before

25   the defendant enters his plea that we're proceeding by video

USA vs Austin Suarez

1   today and obtain the parties' consent.

2        THE COURT:  That's a good idea.  I should have done

3   that in the beginning.  I'm getting so used to it this way

4   rather than open court that I forget about that but it's

5   apparent that we're not all together in one open courtroom.

6   I'm here in Binghamton in the courthouse; US Attorney's in

7   her office; the defense counsel is in his office and you,

8   Mr. Suarez, are confined to jail and the stenographer's yet

9   in a different place as is the clerk.  We are certainly not

10  all together.  We're all in separate places, but it's

11  necessary to proceed by this internet presentation so I can

12  take your plea appropriate, according to the statutes and

13  rules made in such cases and provided.

14        Do you have any problem with proceeding this

15  way instead of being all together in one open courtroom?

16        THE DEFENDANT:  No, sir.

17        THE COURT:  Mr. Teresi, what about you?

18        MR. TERESI:  No objection, Judge.

19        THE COURT:  I guess you're okay with it,

20  Ms. Suarez?

21        MS. SUAREZ:  That is correct, Judge.  I would just

22  add, under General Order 59 and the CARES ACT that the Court

23  find that this case could not be further delayed without

24  serious harm to the interest of justice because the defendant

25  does have pending state cases that may be impacted by further

USA vs Austin Suarez

1   holding up his federal case.  So the parties do see it

2   necessary to proceed by video here in the interest of

3   justice.

4          THE COURT:  All right.  The Court will so find as

5   stated by Ms. Suarez.

6          MS. SUAREZ:  Thank you, your Honor.

7          THE COURT:  Madam clerk, please read the charge in

8   the indictment.

9          THE CLERK:  Yes, Judge.  As to count one, the grand

10   jury charges:  On or about February 18, 2020, in Columbia

11   County, in the Northern District of New York, Co-conspirator

12   A, an individual known to the grand jury, knowingly stole the

13   following firearms from a licensed dealer, that is, Zero

14   Tolerance Manufacturing:

15            Manufacturer, Anderson Manufacturing, type

16   AAM-15 Rifle, serial 16350034, caliber/gauge 5.56 caliber.

17            Manufacturer, Ruger, type AR-556 Rifle, serial

18   853-37686, caliber/gauge 5.56 caliber.

19            Manufacturer, Olympic Arms, type CAR-AR Rifle,

20   serial F6196, caliber/gauge .223 caliber.

21            Manufacturer, Aero Precision, type 15 Rifle,

22   serial X059844, caliber/gauge .223 caliber.

23            Manufacturer, SGW, type CAR-AR Rifle, serial

24   Z6142, caliber/gauge .223 caliber and the defendant, Austin

25   Suarez, did knowingly aid and abet Co-conspirator A in the

USA vs Austin Suarez

1  commission of that offense, in violation of Title 18, United

2  States Code, Sections 924(m) and 2(a).

3                    As to count one how does the defendant plead?

4            THE DEFENDANT:  Guilty.

5            THE CLERK:  Your microphone was on mute.   How do

6  you plead?

7            THE DEFENDANT:  Guilty.

8            THE CLERK:  Do you admit to the forfeiture

9  allegations?

10            THE DEFENDANT:  Yes.

11            THE COURT:  All right.  Ms. Suarez, does the

12  government have sufficient evidence to prove Mr. Suarez

13  guilty beyond a reasonable doubt of the charge in the

14  indictment?

15            MS. SUAREZ:  Yes, your Honor.

16            THE COURT:  What would you prove if we went to

17  trial.

18            MS. SUAREZ:  If we went to trial the government

19  would be required to prove beyond a reasonable doubt, first,

20  that another person knowingly stole firearms; second, the

21  person stole the firearms from a federally licensed dealer;

22  and third, the defendant aided or abetted that person in the

23  commission of that offense, meaning that the defendant, one,

24  knowingly associated himself in some way with that crime and,

25  two, that he participated in the crime by doing some act to

USA vs Austin Suarez

1  help make the crime succeed.

2          At trial the government would prove each of

3  these elements beyond a reasonable doubt through documentary

4  evidence and witness testimony.  The government would show

5  that on February 18, 2020, Zero Tolerance Manufacturing was a

6  federally licensed firearms dealer, FFL number 61401806,

7  operating a retail store at 1131 New York Route 9H in Ghent,

8  New York 12075, in Columbia County, which is in the Northern

9  District of New York.

10          On or about February 18, 2020, the defendant

11  and his co-conspirator agreed that the co-conspirator would

12  break into and steal firearms from Zero Tolerance.  The

13  defendant aided the co-conspirator in obtaining a pry bar and

14  two-way radios during the theft of the firearm.

15          On February 18, 2020, while Zero Tolerance was

16  closed and the doors were locked, the defendant drove his

17  co-conspirator to Zero Tolerance and dropped his

18  co-conspirator off at Zero Tolerance knowing that the

19  co-conspirator would break into Zero Tolerance, steal

20  firearms and return to the defendant's car with the stolen

21  firearms.

22          The co-conspirator entered Zero Tolerance by

23  using a pry bar to open a locked exterior door.  The

24  co-conspirator took the following AR style rifle firearms

25  from within the store without permission while the defendant

USA vs Austin Suarez

1   waited outside:

2               One, an Anderson Manufacturing, Model AAM-15,

3   5.56 caliber rifle, bearing serial number 16350034.

4               Two, a Ruger model AR-556, 5.56 rifle, bearing

5   serial number 853-37686.

6               Three, an Olympic Arms, model number CAR-AR,

7   .223 caliber rifle, bearing serial number F6196.

8               Four, an Aero Precision Model 15, .223 caliber

9   rifle, bearing serial number X059844.

10              And five, an SGW, CAR-AR, .223 caliber rifle,

11  bearing serial number Z6142, all of which belonged to

12  Zero Tolerance.

13              The co-conspirator exited Zero Tolerance with

14  the firearms, returned to the defendant's vehicle and they

15  left with the firearms.  The defendant knew that the

16  co-conspirator placed the firearms in the defendant's car.

17  I'm sorry, that says co-conspirator's car, I believe that was

18  a typo, it should say the defendant's car, and defendant and

19  co-conspirator took the firearms to another location.  The

20  defendant and his co-conspirator knew that they did not have

21  permission to enter Zero Tolerance or remove the firearms.

22              These are the facts that the government would

23  prove at trial.

24          THE COURT:  All right.  Mr. Suarez, did you hear

25  and understand what Ms. Suarez said about your conduct in

USA vs Austin Suarez

1      this case?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  Is that what you did?

4                THE DEFENDANT:  Yes, sir.

5                THE COURT:  Mr. Teresi, is that your understanding

6      as well?

7                THE CLERK:  Your microphone was muted.

8                MR. TERESI:  Sorry about that.  That's correct,

9      Judge.

10               THE COURT:  Okay.  I just want to know if you heard

11     what Ms. Suarez said about your client's conduct?

12               MR. TERESI:  I did, Judge.

13               THE COURT:  And do you agree with her recitation of

14     the facts?

15               MR. TERESI:  I do, yes.

16               THE COURT:  All right.  Ms. Suarez, would you

17     please inform Mr. Suarez and the Court what the maximum or

18     any minimum penalty would be for the count involved.

19               MS. SUAREZ:  Yes, your Honor.  There is no

20     mandatory minimum penalty.  The maximum term of imprisonment

21     is ten years.  The maximum fine is $250,000.  In addition to

22     a term of imprisonment, the Court may require the defendant

23     to serve a term of supervised release of up to three years to

24     begin after imprisonment.  A violation of the conditions of

25     supervised release during that time may result in a term of

USA vs Austin Suarez

1    imprisonment of up to two years.

2              There's also forfeiture within the indictment

3    and the plea agreement.  And the defendant could face other

4    adverse consequences such as the loss of the right to vote

5    and the loss of the right to bear firearms or certain

6    offices.

7              THE COURT:  All right.  Mr. Suarez, did you sign

8    your plea agreement in this case?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Did you talk it over with Mr. Teresi

11   before you signed it?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Did he explain it to you?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Did you understand it when you signed

16   it?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Did you sign it voluntarily?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  In your -- well, let me ask you,

21   Mr. Teresi, did you sign on behalf of your client knowingly

22   and voluntarily?

23             MR. TERESI:  Yes, Judge.

24             THE COURT:  Ms. Suarez, did you sign on behalf the

25   government knowingly and voluntarily?

USA vs Austin Suarez

1          MS. SUAREZ:  Yes, your Honor.

2          THE COURT:  All right.  In your plea agreement,

3    Mr. Suarez, on page 6 at paragraph 7, you informed the Court

4    that after consultation with Mr. Teresi that both you and he

5    believe it to be in your best interest to waive or give up

6    certain appeal rights in this case and they are as follows:

7              The right to appeal or collaterally attack

8    your conviction resulting from your plea today.  The right to

9    appeal or collaterally attack the fact that the statute to

10   which you're pleading guilty is unconstitutional.  The right

11   to appeal or collaterally attack any claim that your conduct

12   does not fall within the scope of the statute.  The right to

13   appeal or collaterally attack any sentence to a term of

14   imprisonment of 120 months or less.  The right to appeal or

15   collaterally attack any sentence to a fine within the maximum

16   permitted by law.  And the right to appeal or collaterally

17   attack any sentence of supervised release within the maximum

18   permitted by law.

19             Did you know what you were doing when you

20   agreed to give up those appeal rights?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And did you do that voluntarily?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  All right.  The Court also has to

25   inform you that it's not bound by any sentencing

USA vs Austin Suarez

1    recommendation contained in the plea agreement and you'll

2    have no right to withdraw your plea of guilty if the Court

3    decides not to accept any non-binding recommendation.  The

4    Court will, of course, defer or put off its decision to

5    accept or reject any recommendation until I've seen the

6    Presentence Investigation Report and any other materials that

7    bear on sentencing that are forwarded to me by the government

8    or by Mr. Teresi or by you or anybody on your behalf.

9              THE CLERK:  Judge, I'm sorry, I have to

10   interrupt --

11             THE COURT:  Do you understand what I said about the

12   Court's ability to accept any non-binding recommendation in

13   the plea agreement?

14             THE CLERK:  Judge, this is Angela, I'm sorry I have

15   to interrupt.  It looks like Mr. Teresi dropped off the call.

16   Let me see if I can get him to at least call in by phone.

17             THE COURT:  Okay.

18             MR. TERESI:  This is Greg Teresi, I apologize, my

19   internet cutout.

20             THE COURT:  Are you with us now?

21             MR. TERESI:  I am, Judge.  You were in the process

22   of reviewing the waiver of rights to appeal or collaterally

23   attack.  I believe you were on 7C at the time that I cutout.

24             THE COURT:  All right.  Well, you went over all of

25   those appeal rights with your client, Mr. Suarez, did you

USA vs Austin Suarez

1  not?

2          MR. TERESI:  I did, Judge.

3          THE COURT:  All right.  He said he understood that

4  you and he agreed that you were waiving or giving up those

5  particular rights to appeal.  Do you recall that?

6          MR. TERESI:  That's correct, Judge.

7          THE COURT:  All right.  I was just informed -- the

8  Court's not bound by any sentencing recommendation contained

9  in the plea agreement and you'll have no right to withdraw

10 your plea of guilty if the Court decides not to accept any

11 non-binding recommendation.  The Court will, of course, defer

12 or put off its decision to reject or accept any

13 recommendation until I've seen the Presentence Investigation

14 Report and any other materials that bear on sentencing that

15 are forwarded to me by the government or by Mr. Teresi,

16 defense counsel, or by you, Mr. Suarez, or anybody on your

17 behalf.

18          So, do you understand what I just said about

19 the Court's ability to accept or reject any non-binding

20 recommendation contained in the plea agreement?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Now that you've heard about the

23 potential statute -- woops, you haven't heard about the

24 guidelines yet.

25          How about that, Ms. Suarez, have you done a

USA vs Austin Suarez

1    guideline calculation.

2            MS. SUAREZ:  Yes, your Honor.  The sentencing

3    stipulations in the plea agreement, just having them on the

4    record, do reflect that the parties agree that the offense

5    involves firearms resulting in a two-point enhancement in the

6    offense level.  The parties disagree as to the application of

7    additional offense characteristics.  It's not clear

8    whether -- it's the government's position that the offense

9    involved stolen firearms resulting in a two-point increase.

10   The defense reserves the right to disagree with that.

11           The government also -- the government's

12   position that the offense involved use or possession of any

13   firearm or ammunition in connection with another felony

14   offense resulting in a four point increase under

15   2K2.1(b)(6)(B) and the defendant reserves the right to

16   disagree with that.

17           The government also agrees to make a two-level

18   downward adjustment recommendation for acceptance of

19   responsibility if the defendant complies with the obligations

20   set forth in the plea agreement sentencing stipulations and

21   the government would also move for a one-level downward

22   adjustment to the guidelines that if the defendant abides by

23   the plea agreement and what's required of the sentencing

24   guidelines.

25           Given all that, your Honor, the government did

USA vs Austin Suarez

1   do an estimated guideline calculation and it's the
2   government's estimate that the guidelines are 120 months
3   given the maximum ten year cap on the term of imprisonment in
4   this case.
5          THE COURT:  All right.  Mr. Suarez, now that you've
6   heard about the potential statutory sentence and the
7   guidelines, do you still wish to plead guilty?
8               Did you hear me, Mr. Suarez?
9          THE DEFENDANT:  Yes, sir.
10          THE COURT:  Do you still wish to plead guilty?
11          THE DEFENDANT:  Yes.
12          THE COURT:  And are you pleading guilty because you
13   are guilty?
14          THE DEFENDANT:  Yes.
15          THE COURT:  All right.  Mr. Teresi, please state
16   your background and experience in handling matters of this
17   kind.
18          MR. TERESI:  Yes, Judge.  I've been admitted to the
19   Northern District of New York for approximately 13 years.
20   I've tried numerous felony and misdemeanor cases before
21   juries, approximately 40 in total.  In my 13-year career I've
22   handled thousands of felony and misdemeanor cases.  I've
23   spent approximately, I would say, maybe 100 hours working on
24   this case, Judge, both reviewing the evidence with my client
25   and on my own.

USA vs Austin Suarez

1           THE COURT:  All right.  Have you had what you

2    believe to be adequate discovery of the government's case?

3           MR. TERESI:  Yes, Judge.  Discovery in this case

4    was voluminous and the government was forthright in every

5    aspect that I could state.

6           THE COURT:  Have you advised Mr. Suarez of his

7    rights, the nature of the charge and the consequences of

8    pleading guilty?

9           MR. TERESI:  I have, Judge.

10           THE COURT:  Except what's contained in the plea

11    agreement, have you made any promises or threats to induce

12    him to plead guilty?

13           MR. TERESI:  No, sir.

14           THE COURT:  Are you satisfied that he's pleading

15    guilty freely and voluntarily with an understanding of the

16    charge and the consequences?

17           MR. TERESI:  I am.

18           THE COURT:  Do you know of any defenses that he has

19    that would prevail if the case went to trial?

20           MR. TERESI:  I believe it would be a risk, and I

21    don't believe that my client is prepared to take, and I'm not

22    sure that the defenses would one hundred percent prevail in

23    court.

24           THE COURT:  Well you're not sure, but it would be

25    your opinion, based upon the time you spent with Mr. Suarez

USA vs Austin Suarez

1    and your years of experience, as you are already iterated,

2    that it would be more likely than not that the defenses would

3    not prevail if he were to go to trial?

4           MR. TERESI:  That's correct, Judge.

5           THE COURT:  All right.  Do you know of any reason

6    why he should not plead guilty?

7           MR. TERESI:  No, sir.

8           THE COURT:  All right.  Based on the foregoing the

9    Court will find that Mr. Suarez pled guilty freely and

10   voluntarily; that he is and was competent to enter such a

11   plea; that he understands the charge against him and the

12   consequences of pleading guilty; that there is and was a

13   basis in fact for the Court accepting and entering the plea.

14           The Court will direct the probation department

15   to prepare and submit a Presentence Report.

16           The Court will set sentencing for May 11, 2021

17   at 2 PM in Albany, New York.

18           THE CLERK:  Judge, hold on one second.  Andrew, can

19   you unmute his microphone, please.

20           THE COURT:  Ms. Suarez, is there anything further

21   from the government?

22           MS. SUAREZ:  I'm sorry.  There's nothing further

23   from the government, your Honor.

24           THE COURT:  All right.  What about you, Mr. Teresi,

25   anything further from defense?

USA vs Austin Suarez

```
1              MR. TERESI:  Nothing from defense, Judge.
2              THE COURT:  All right.  Court stands adjourned in
3    this matter.  Thank you all.
4                   (Court stands adjourned.)
5
6              CERTIFICATE OF OFFICIAL REPORTER
7
8              I, VICKY A. THELEMAN, Federal Official
9    Realtime Court Reporter, in and for the United
10   States District Court for the Northern District of
11   New York, do hereby certify that pursuant to Section
12   753, Title 28 United States Code that the foregoing
13   is a true and correct transcript of the
14   stenographically reported proceedings held in the
15   above-entitled matter and that the transcript page
16   format is in conformance with the regulations of the
17   Judicial Conference of the United States.
18
19
20                        /s/ Vicky A. Theleman
21                   VICKY A. THELEMAN, RPR, CRR
22                   US District Court - NDNY
23
24
25   Dated:  July 9, 2021.
```